UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK NEILL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STEPHANIE CLENDENIN, et al.,<br><br>　　　　Defendants. | No. 1:23-cv-00901-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSAL OF ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>(ECF No. 1) |

Plaintiff is a civil detainee proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's complaint, filed June 15, 2023.

**I.**

**SCREENING REQUIREMENT**

As Plaintiff is proceeding in forma pauperis (ECF No. 4), the Court screens the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

1

Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of pro se plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that pro se complaints should continue to be liberally construed after Iqbal).

## II.

## SUMMARY OF ALLEGATIONS

Upon admission to the Department of State Hospitals-Coalinga (DSH-C), Plaintiff was given a copy in his admission pack of a document entitled "Patients' Rights and Related Procedures," which outline the patient's advocacy services and include the procedures for patients like Plaintiff to file appeals if they are unsatisfied with the advocates findings.

The Patients Right Advocate (PRA) is onsite but the office is not physically located within the secured treatment area of the facility and is not directly assessable by the patients.  Patients are informed that in order to file a complaint, they may use the "patients' rights phone" (which is a phone on individual treatment units).  A patient may also write a grievance on a complaint form and mail it via interdepartmental mail, or place a complaint in a drop box in the patient "mall area" of the facility.

When a patient believes a right was violated or there are concerns related to other issues regarding treatment, abuse, or neglect, the process for investigating the issues start with the written or telephone complaint.  If a patient writes a complaint, the PRA who receives it will respond in writing with the findings.  If the patient disagrees with the complaint findings and feels, the next step is an appeal to the Executive Director (ED) of the facility.  The ED then makes a determination as to the findings, and if dissatisfied the patient may appeal the complaint to the

1   next level-the Office of Patients' Rights-Sacrament (OPR).  If after the OPR reviews the

2   complaint and the patient is still dissatisfied, the last level is the designee appointed by the DSH-

3   Defendant Clendenin.  This process is in accordance with the patient rights and related procedures

4   as held in DSH-C policy known as administrative directed (AD 606).  AD 606 also states that any

5   person can file a complaint such as a relative or another patient on behalf of a peer.

6         Defendant Clendenin has appointed the Office of Human Rights (OHR) to respond to last

7   level patient rights appeals and appoints a "patient rights analyst" to review the complaint.  OHR

8   also provides human resources services to the employees of the DSH, and has a separate unit that

9   investigates patient rights complaints.  Disability Rights California (DRC) is California's

10  Protection and Advocacy agency.  DRC is an independent nonprofit agency established in 1978

11  pursuant to the Developmental Disabilities Assistance and Bill of Rights Act.  42 U.S.C. § 15001

12  (DD Act).  Like the DSH, DRC receives federal funding for advocacy services and contracts out

13  one advocacy unit, OPR (which assigns PRA's to individual state hospitals).  OHR is separate

14  from DRC/OPR and is a division of DSH designated by Defendant Clendenin to

15  handle/investigate last level patient rights grievances.

16        After the last level grievance is exhausted, patients are informed they may file a lawsuit to

17  remedy patient rights concerns with the court if they choose to.  Plaintiff asserts that the patients'

18  rights process and its services are inadequate, and Defendants have failed to advocate patient

19  rights issue exacerbating the risk of harm, abuse and neglect.  Plaintiff also asserts that

20  Defendants have directly employed and erected barriers to preclude constitutionally adequate

21  advocacy and investigations into abuse, neglect and harm.  Defendants fail to thoroughly

22  investigate and resolve complaints, and instead collude together to stall, frustrate, impede and

23  harm Plaintiff's attempt to seek out assistance in the form of an actual mental health advocacy

24  and investigations services.  Plaintiff asserts Defendants are not actually providing patient rights

25  advocacy but rather employ a system for way patients can exhaust administrative remedies,

26  essentially subverting Congressional intent of the PAIMI Act and PAIR Act.

27        Defendants removed the onsite patients' rights office that was easily assessable for

28  Plaintiff to walk into a PRA office and voice his concerns.  Defendants moved the office away

1 from patient's access, and the office is now located in the administration building where patients
2 do not have direct advocate access.  Plaintiff was informed and made aware after reviewing
3 evidence in his possession that the reason from a form PRA was purportedly due to the
4 "numerous amounts of patient complaints" and the "lack of funds for more advocates."  A former
5 PRA supervisor claimed that the Patients Right Advocates would relocate back to a more patient
6 accessible area once they were "caught up" on resolving these complaints, but have failed to do
7 so.
8      From 2021 to 2023, Plaintiff used the patients' rights phone to file complaints related to
9 various patient rights issues.  No advocate picked up the phone.  Plaintiff left messages that were
10 oftentimes never returned or the message line was full and it took weeks to get a response.  When
11 Plaintiff does speak to an advocate on the phone, they simply tell him he will receive a complaint
12 form back with their findings, and they redirect him suggesting he would be better off speaking to
13 other "DSH officials like a Unit Supervisor or Program Director related to his grievance."
14 Plaintiff also has to wait two or three months for a written response.
15      In other instances, advocates have responded to Plaintiff's complaints by informing him
16 that, "we tried to reach you on the unit, but the phones were busy."  The advocate never walked
17 onto the treatment unit to speak to Plaintiff and failed to employ reasonable alternatives to meet
18 with him like using Zoom or WebX.
19      Plaintiff filed a patient's right complaint alleging in one instance that he experienced a
20 violation of his attorney client privilege when Plaintiff reported a clearly marked confidential
21 letter from his attorney was opened outside presence and then resealed.  Plaintiff asked the PRA
22 to investigate the incident.  The advocate never came onto the unit to interview the Plaintiff, ask
23 for evidence, seek out witnesses, or offer ways to resolve the constitutional violation in the
24 grievance.  The advocate failed to suggest other advocacy agencies that could be available to
25 intercede and help Plaintiff.  The written response stated to "review a California Code of
26 Regulations" and a "hospital policy."  The appeal to OPR used a boilerplate response stating that
27 the opening of attorney client legal mail not in Plaintiff's presence was not a patient's right and
28 the complaint investigation findings did not support a patient right was violated.

4

1    Defendant Clendenin's designee, OHR simply sent a letter to Plaintiff claiming that they
2 have "no time frame in which to issue Plaintiff a response," delaying a last level grievance appeal
3 that was not fair, adequate and timely as required per federal and state law.
4    Upon information and belief, no one at OHR, OPR, or a PRA has ever sustained a patient
5 rights violation has occurred at DSH-C since its opening in 2006.
6    Plaintiff filed a PRA complaint because DSH-C failed to reasonably accommodate
7 treatment related books and stalled the mental health treatment process. Plaintiff also alleged
8 DSH-C failed to provide treatment groups clinically indicated in his treatment plan and as
9 required under federal law. Defendant Alvarez sent a written response back to Plaintiff after
10 Plaintiff tried unsuccessfully to reach an advocate over the phone.
11    Defendant Alvarez simply made a statement that, "patients have a right to health
12 treatment," but again failed to contact Plaintiff, gather evidence, interview treatment providers,
13 participate in a treatment team, or interview psychologist with Plaintiff to try to ensure the right to
14 mental health treatment would be observed. Plaintiff appealed this decision, but his claim was
15 unfounded. Plaintiff also filed complaints regarding dropped calls lasting thirty second during
16 attorney calls and court call proceedings. The responses were all same pattern and practice of
17 delay and diverting Plaintiff to advocate for himself without any meaningful attempts by
18 Defendants to help.
19    In other instances when Plaintiff alleged he and his peers were placed in harm's way and
20 neglected by unit staff during the COVID pandemic, he reached out for advocacy assistance.
21 Plaintiff received a written reply "thanking" him for raising the issue and said the best course was
22 to talk to the Unit Supervisor.
23    PRA advocates have failed to make reasonable arrangements to make themselves
24 available, they do not pick up the phone, and fail to meet with Plaintiff personally to conduct
25 interviews or collect evidence relevant to Plaintiff's complaints.
26    Defendant Michell Mudgett is the Director of COPR and is directly responsible for the
27 overseeing of its advocacy services and the employees providing advocacy and investigations.
28 Mudgett obstructed the appeal process by permitting DSH-C Defendant Clendenin to designate

another patients right advocate (OHR) to have no time frame in which to respond to the last level appeals.

Defendant Natalie Sanders has failed to investigate and advocate for patients' rights by allowing the department to have no time frame to respond to complaints. Defendant Sanders failed to train her staff on the grievance process pertaining to advocacy and caused Plaintiff harm.

Defendant Clendenin knew or should have known of the law which requires her to have only one contactor involved in the patients' right process, but instead designated two, COPR and OHR.

## III.

## DISCUSSION

### A.   Appeal Process

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. at 221. Plaintiff does not a have protected liberty interest in the processing and/or handling of his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Similarly, Plaintiff may not impose liability on a Defendant simply because he or she played a role in processing or responding to Plaintiff's inmate appeals. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (because an administrative appeal process is only a procedural rights, no substantive right is conferred, no due process protections arise, and the "failure to process any of Buckley's grievances, without more, is not actionable under section 1983."). Therefore, Plaintiff cannot seek liability against any Defendants, solely, for their involvement in reviewing and denying his inmate appeals. See Yoon v. Arnett, 385 F. App'x 666, 668 (9th Cir. 2010) (affirming dismissal of due process claim based on defendants' alleged failure to respond to, and interference with, plaintiff's administrative grievances because plaintiff had no "due process right to the handling of grievances in any particular manner"); Ackerson v. Elliott, 2022 WL 329115, at *3 (E.D. Cal. Feb. 3, 2022) (pretrial detainee could not state a

cognizable civil rights claim based on defendant's actions in refusing or responding to the plaintiff's appeals); Campos v. Barnes, 2021 WL 1564459, at *6 (C.D. Cal. Apr. 21, 2021) ("Detainees and prisoners do not have an independent constitutional due process entitlement to a specific administrative grievance procedure."). The mere fact that Plaintiff does not agree with the inmate appeal process is not sufficient to give to a constitutional violation. Accordingly, Plaintiff fails to state a cognizable claim for relief.

### B.     Failure to Investigate

To the extent Plaintiff alleges that any Defendants failed to investigate Plaintiff's appeal regarding the alleged excessive force and sexual assault, that is not a basis for a plausible due process claim. Baker v. Beam, 2019 WL 1455321, at *6 (E.D. Cal. 2019). To the degree Plaintiff is trying to hold the individuals or others liable for an independent, unspecified constitutional violation based upon an allegedly inadequate investigation, there is no such claim. See Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved." ); Page v. Stanley, 2013 WL 2456798, at *8–9 (C.D. Cal. June 5, 2013) (dismissing Section 1983 claim alleging that officers failed to conduct thorough investigation of plaintiff's complaints because plaintiff "had no constitutional right to any investigation of his citizen's complaint, much less a 'thorough' investigation or a particular outcome").

### C.     Supervisory Liability

To the extent Plaintiff sues Defendant Michelle Mudgett in her supervisory capacity, he does not allege facts demonstrating that Defendant violated his federal rights, but seems to claim Defendant is liable based on the conduct of her subordinates. There is, however, no respondeat superior liability under section 1983 solely because a defendant is responsible for the actions or omissions of another. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Id. A supervisor may also be held liable if he or she implemented "a policy so deficient

1 that the policy itself is a repudiation of constitutional rights and is the moving force of the
2 constitutional violation." Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991).

### D. Leave to Amend

Although the court would generally grant Plaintiff leave to amend in light of his pro se status, amendment is futile in this instance because the deficiencies cannot be cured by amendment. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000); Schmier v. U.S. Court of Appeals for the Ninth Circuit, 279 F.3d 817, 824 (9th Cir. 2002) (recognizing "[f]utility of amendment" as a proper basis for dismissal without leave to amend); see also Ramirez v. Galaza, 334 F.3d at 860.

## IV.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that the instant action be dismissed, without leave to amend, for failure to state a cognizable claim for relief.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14)** days after being served with this Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 4, 2023**

UNITED STATES MAGISTRATE JUDGE